## VOWELL *v.* STATE.

## (*Jackson.* April Term, 1915.)

1. **CRIMINAL LAW. Felony. Presence of accused during trial.**
   In a felony case accused must be present during his trial in the circuit court, criminal court, or other court of original jurisdiction. (*Post,* p. 352.)

   Acts cited and construed: Acts 1901, ch. 102.

   Cases cited and approved: Percer v. State, 118 Tenn., 765; Hopt v. Utah, 110 U. S., 574; Lewis v. United States, 146 U. S., 370.

2. **CRIMINAL LAW. Appeal. Presence of accused during hearing on appeal. "In all criminal prosecutions."**
   In a felony case accused, confined in the penitentiary under Acts 1901, ch. 102, pending his appeal, or at large on bond, need not be present in the supreme court when hearing or deciding the case, notwithstanding Const., art. 1, sec. 9, providing that in all criminal prosecutions accused shall have the right to be heard by himself and his counsel, which applies only to the trial court; the phrase "in all criminal prosecutions" applying only to a trial prosecuted by the State, which does not include a review on appeal or writ of error, which is a proceeding brought by accused himself. (*Post,* p. 353.)

   Case cited and approved: King v. Speake, 3 Salk., 358.

   Cases cited and distinguished: Phleming v. State, Minor (1 Ala.), 42; State v. Overton, 77 N. C., 485; State v. David, 14 S. C., 428; Donnelly v. State, 26 N. J. Law, 463; Fielden v. People, 128 Ill., 595; Schwab v. Berggren, 143 U. S., 442.

   Code cited and construed: Sec. 6336 (S.).

   Constitution cited and construed: Art. 1, secs. 9, 13.

3. **CRIMINAL LAW. Appeal. Procedure. Rights of accused.**
   Const., art. 1, sec. 17, guaranteeing due course of law, gives to accused the right to present his case to the supreme court

on appeal or writ of error either in person or by counsel, and the court will seldom deny accused's request for permission to be personally present and to address the court with his counsel, but the court will not permit him to be without counsel, and will appoint one to appear for him, though accused appears and argues the case in person. (*Post, p.* 361.)

Code cited and construed:　Sec. 7224 (S.).

Constitution cited and construed:　Art. 1, sec. 17.

4.　CRIMINAL LAW.　Judgment on appeal.　Presence of accused.
Accused appealing from a conviction of a felony must be present when judgment is rendered on appeal, though he has been released on bond, and only under very special circumstances will the court reverse a judgment in a felony case where accused is under bond without requiring his presence in court. (*Post, p.* 364.)

Code cited and construed:　Secs. 6331, 6332, 7112 (S.).

---

FROM CROCKETT.

---

Appeal from the Circuit Court of Crockett County. —T. E. HARWOOD, Judge.

T. C. GORDON, for appellant.

FRANK M. THOMPSON, Attorney-General, for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was indicted and convicted in the circuit court of Crockett county for the crime of burning his house to obtain the insurance, and is now

Vowell v. State.

serving a term in the State penitentiary. He appealed in error to this court, but, having filed no bill of exceptions, the execution of the judgment was not stayed, and he was transported to the penitentiary in obedience to chapter 102, Acts of 1901, to enter upon the period of his servitude pending the appeal.

When the case was called for argument here the attorney-general inquired whether the court would order the prisoner to be brought from Nashville to Jackson so that he might be present at the hearing. This was considered unnecessary, and the case was. proceeded with in his absence. There being, as already stated, no bill of exceptions, and no error being found on the technical record, the judgment was affirmed.

The practice in this court heretofore has been, in felony cases, to have the prisoner present; the only exception being that we have occasionally announced a judgment of reversal with a remand for a new trial where the plaintiff in error was on bond, permitting him to come in later and execute a bond or enter into a recognizance to appear at the next term of the trial court, meantime withholding the formal entry until the new obligation could be executed. Very little inconvenience has resulted from this practice as to persons under bond or recognizance, or in the case of persons in jail and transported from the counties in which they were convicted to the place where the supreme court might be sitting (Nashville, Knoxville, or Jackson), although quite an item of expense to the State in cases of the latter kind. When sitting at Nashville it is not

very inconvenient or expensive to the State to have a prisoner brought from the penitentiary into court for trial; but when we are sitting at Knoxville or Jackson it is quite inconvenient and very expensive, to say nothing of the danger of escape, to have the prisoner, under the care of guards, transported some hundreds of miles from the penitentiary to the place of the court's sitting. Cases of this kind occurring under the operation of the act of 1901 previously cited, or when the prisoner has been convicted of one offense, has been incarcerated in the penitentiary for that, has been subsequently transferred to the trial court to stand trial for another offense, been returned to the penitentiary, and afterwards been brought out to have his case heard by the supreme court, and transported across the State, as already mentioned—these cases have brought the subject forcibly to our attention, and impressed upon us the duty of deciding whether it is essential to jurisdiction in any case that the appellant in a criminal case shall be personally present during the argument, or at the decision of his case in the appellate court.

The question has received consideration in several jurisdictions, and has, we believe, without exception, been answered in the negative.

There is no doubt that the accused must be present during his trial in the circuit court, criminal court, or other court of original criminal jurisdiction. *Percer v. State,* 118 Tenn., 765, 103 S. W., 780; *Hopt* v. *Utah,* 110 U. S., 574, 4 Sup. Ct., 202, 28 L. Ed., 262; *Lewis*

---

Vowell v. State.

---

v. *United States,* 146 U. S., 370, 373, 13 Sup. Ct., 136, 36
L. Ed., 1011.

It is equally clear that he need not be present in the
appellate court. *Phleming* v. *State,* Minor (1 Ala.),
42; *State* v. *Overton,* 77 N. C., 485; *State* v. *David,* 14
S. C., 428; *Donnelly* v. *State,* 26 N. J. Law, 463, 471,
and cases cited; *Fielden* v. *People,* 128 Ill., 595, 599 *et
seq.,* 21 N. E., 584, and cases cited; *Schwab* v. *Berg-
gren,* 143 U. S., 442, 12 Sup. Ct., 525, 36 L. Ed., 218.

*Phleming* v. *State:*

"The constitution guarantees to the accused the
right of being heard by himself and counsel. It is said
that he cannot be heard unless present. We are of
opinion, that this guaranty applies only to the courts
in which the facts are to be inquired into, and the ac-
cused to be confronted by the witnesses against him."

*State* v. *Overton:*

The defendant had been tried in the lower court and
convicted of murder, and he appealed to the supreme
court of North Carolina. That court held there was
no error, and ordered that its decision be certified to
the trial court to the end that the latter might proceed
to judgment and execution. When the defendant was
called to receive judgment there, he objected that it
should not be rendered against him, because he had
been improperly convicted, and had been denied his
constitutional right, in that he had not been present in
the supreme court when his case was argued and deter-
mined. Speaking to this matter, the court said:

132 Tenn.23

"The objection is founded upon an erroneous idea of a criminal trial, and of the power and duty of this court in such case brought before it by appeal. The constitution provides that a defendant in a criminal action shall be informed of the accusation against him, and shall have the right to confront the accusers and witnesses with other testimony, and shall not be convicted except by the unanimous verdict of a jury of good and lawful men in open court, as heretofore used. That is his trial. This, of course, implies that he shall have the right to be present. If he complains of any error in his trial, the record of the trial is transmitted to this court.

"Here are no 'accusers,' no 'witnesses,' and no 'jury;' but upon inspection of the record this court decides whether there was error in the trial, and, without rendering any judgment, orders its decision to be certified to the court below. It has never been understood, nor has it been the practice, that the defendant shall be present in this court; nor is he ever 'convicted' here."

*State* v. *David*:

"At the hearing of this case, the appellant being absent, the question was raised whether his presence was necessary; the court ruled that the hearing might proceed without the presence of the prisoner. As this is a departure from the practice heretofore obtaining in this State, although not embraced in the appeal, it may not be improper for the court to state briefly the grounds of this ruling. The practice of having the

prisoner in cases of felony present in the appellate court was because of the ancient practice and precedents in the English courts. This practice grew up in England because a prisoner indicted for felony could not at common law appear by attorney or counsel. Therefore his presence was always required in every stage of the proceedings.

"In the United States a different system prevails. In all criminal cases and in all the courts the accused is entitled to counsel. In this State he is entitled by article 1, section 13, of the constitution to be fully heard in his defense by himself or by his counsel, or by both; and, if he claimed the right to be present and be heard in his defense, he would be entitled to that privilege, but his personal presence is not necessary in this court as a condition precedent to the hearing of such questions as may be raised here by appeal."

*Donnelly* v. *State*:

After stating the ancient English practice, substantially as in the preceding case, the court continued:

"But a totally different practice appears to have prevailed in this State upon proceedings in error. Upon as full an examination of the precedents as has been practicable since the application, we do not find a single case where upon writ of error the prisoner has been brought into court upon *habeas corpus* or has assigned errors in person."

After referring to authorities sustaining the point, the court proceeds:

"These cases meet one of the suggestions made by counsel upon the argument, that the prisoner is executed by virtue of the judgment of the higher court, and that he must . . . necessarily be present when the sentence is pronounced. This question, though not raised or discussed by counsel, attracted the attention and underwent the consideration of this court in the case of *State* v. *Fox* [25 N. J. Law], 566. It appeared then to the court that, if the prisoner was to be sentenced here, he must necessarily be present. But the judgment in error in capital cases, as in others, is simply of affirmance or reversal of the sentence pronounced upon the prisoner by the court below. By virtue of that sentence he is executed. The mandate for execution issues from the court below, not from the court of errors. The prisoner is executed by virtue of that mandate. The writ of error does not suspend its execution or impair its efficiency. . . ."

*Fielden* v. *People*:

Samuel Fielden, Michael Schwab, Albert R. Parsons, Adolph Fisher, George Engle, and Louis Ling had been tried and convicted in the criminal court of Cook county, and sentenced to be hanged for the crime of murder. A writ of error was procured from the supreme court of the State, and duly prosecuted. In the supreme court, no error being found in the proceedings of the trial court, the judgment of that court was affirmed, and a new date for the execution fixed. The judgment of affirmance contained the words "came the parties," thus indicating the prisoners' presence in court, when

Vowell v. State.

the judgment was rendered; but, in fact, they were not present. They were confined in the Cook county jail. A motion was made to correct this recital with a view to making the point that the judgment was void because of the absence of the prisoners. "In our opinion," said the court, "the amendment, if made, would be inconsequential, and would not affect, in the slightest degree, the rights of the parties under the judgment."

The opinion in this case sets out with more particularity than any of the others cited the reasons for the common-law rule applicable to trial courts; that the defendant might be identified by the court as the real party to be punished (Holt, 399); that he might have an opportunity to plead a pardon (3 More, 365), or move in arrest of judgment (*King* v. *Speke*, 3 Salk., 358); that he might have an opportunity to say any thing he could why judgment should not be pronounced against him (2 Hale's Pleas of the Crown, 401, 402); and that the example of defendants found guilty of misdemeanors of a gross and public kind might be brought up for the animadversion of the court, to the end that others might thereby be deterred from the commission of similar offenses. 1 Chitty, Cr. Law (5 Ed.), 693, star page 696.

It is obvious that none of these points of practice are essential to an appellate court, and that some of them are wholly inapplicable.

The matter of the identity of the person accused with the party before the court cannot arise, since the case

comes up on a written or printed transcript of the record of the trial always, with the accused held in custody, or on bond or recognizance. The practice of moving in arrest of judgment is unknown in appellate courts, or of the accused being called on to say why he should not be punished. It is true that he may offer to the court, on mere motion, a pardon obtained after the judgment of the trial court, but this can be done just as effectively after judgment in the appellate court as before, and by counsel. Under such circumstances the latter court would not hesitate to set aside its judgment of affirmance. As to animadversion on the evil example referred to, this may as well be uttered in the absence of the accused as in his presence; moreover, these admonitions are more fitted to trial courts than to appellate courts. In many of the latter the opinions of the judges are merely handed down in writing. In jurisdictions like our own, where they are usually delivered orally, or read aloud from manuscript, those who hear are generally only lawyers, who, we may presume, are from their legal studies fully apprised of the nature and tendency of crimes punished by courts.

It is true that an accused not personally present in court could not be instantly aware of the judgment. Such instant knowledge, however, is not material. If present, there is nothing he could do or say to change the result. At most, he could file a petition for rehearing, within the time permitted by the rules of the court, or within such additional time as might be

Vowell v. State.

granted by the judges. Such petitions are properly
filed by counsel, and accused persons should always be
so represented by counsel of their own selection; if no
such counsel appear, then by counsel appointed by the
court to defend them. Nor is it important, as inti-
mated in one of the cases referred to, that the accused
should be present when the court appoints counsel for
him. If he fail to exercise the privilege of selecting his
counsel himself, he can have nothing to say to the
court's selection.

Nor is it essential that the accused be present to re-
ceive the sentence or judgment of the court, whether it
be in the form of a mere affirmance of the judgment
of the trial court and a remand for its execution or
a new judgment in the appellate court, substantially
in the terms of the judgment of the trial court. The
appeal in error or writ of error, as the case may be,
in a felony case, places the accused under the jurisdic-
tion of the appellate court, and personally and bodily
within its power. It cannot be important whether that
court by a remand restores the jurisdiction of the trial
court to execute its judgment which has been affirmed,
or on affirmance make the judgment its own, and there-
after execute it. Such execution may be effected in
this State by an order to the marshal of the court to
proceed to the jail of the county wherein the prisoner
is confined, take possession of him, and transport him
to the penitentiary, or such order may be issued to the
sheriff of any county having him in charge or to an
official of the penitentiary. This court is authorized

by statute to issue any process which it may deem proper to effectuate its jurisdiction. Shan. Code, section 6336.

Is there anything in our constitution which forbids the practice we have indicated as permissible? Article 1, section 9, reads:

"That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or presentment, a speedy public trial, by an impartial jury of the county in which the crime shall have been committed, and shall not be compelled to give evidence against himself."

A similar provision in the constitution of Illinois was held in the case last referred to (*Fielden* v. *People*) to apply only to trial courts. As to our constitutional provisions just quoted the soundness of the same application is manifest. There can never be any necessity for demanding in an appellate court the nature and cause of the accusation, or for giving the accused a copy. He has already had these rights accorded him in the trial court, and a copy of the accusation, be it indictment or presentment, always appears in the transcript transmitted to the appellate court. No witnesses are called or can be heard on either side in the appellate court and there is no jury, and the appellate court can never hear the trial in the county where the crime

was committed, unless it should happen to have been committed in the county where the constitution or the laws require the court to have its regular sittings. So it is clear none of these provisions can apply to the appellate court.

All of these provisions applying incontestably, as they do, to the trial court only, it would seem that the only remaining one must have the same construction, that is, the right of the accused to be heard by himself and counsel. This is strengthened by the expression "in all criminal prosecutions;" since, as pointed out in *Fielden* v. *People,* supra, the trial in the appellate court is not a prosecution by the State, but a proceeding in error brought by the accused himself, through his appeal in error or writ of error, to reverse the judgment rendered against him by the trial court.

But, aside from the constitutional provision quoted, it is, no doubt, true that in order to prosecute his writ of error or appeal in error the plaintiff in error has the right to present his case to the court either in person or by counsel. The constitutional provision (article 1, section 17) guaranteeing due course of law could not be otherwise complied with. As to which method should be pursued in any given case, this must be, as the occasion arises, a matter for the judgment of the court, holding in tender consideration always the best interests of the prisoner. In some cases it might be deemed best to hear both the plaintiff in error and his counsel. Experience, however, shows that there are very few plaintiffs in error in criminal cases who

can raise or argue points of error in an appellate
court, or do themselves the slightest service in respect
of such matters. We may add, however, that, in our
opinion, out of its compassion for a fellow human
creature in bonds, the court could rarely see its way
clear to deny his request for permission to be person-
ally present, and to address the court along with his
counsel. But we do not think the court would ever be
willing that he should be without counsel, or should
trust to his own efforts. Counsel would be appointed
by the court to appear for him, even if the plaintiff
in error should appear and argue the case in per-
son.

Further upon the subject of due course of law, we
wish to refer more particularly to the case of *Schwab*
v. *Breggren,* supra. That case, a *habeas corpus* pro-
ceeding, arose out of the judgment of the supreme
court of Illinois in *Fielden* v. *People,* supra. Schwab
sued out a writ of *habeas corpus,* in one of
the Federal courts of Illinois, making the question
that he had not been accorded due process of law, in
that he was not present in court when the supreme
court of Illinois affirmed the judgment of death against
him, but was then confined in the Cook county jail. A
demurrer was filed which, of course, admitted the facts
averred in the petition. The demurrer was overruled,
and the petition dismissed. Subsequently, when the
case reached the supreme court of the United States,
the judgment of the lower court was affirmed, the su-
preme court, after recognizing the necessity of the pres-
ence of the accused in the trial court, saying:

Vowell v. State.

"But neither reason nor public policy require that he shall be personally present pending proceedings in an appellate court, whose only function is to determine whether, in the transcript submitted to them, there appears any error of law prejudicial to the accused; especially where, as in this case, he had counsel to represent him in the court of review. We do not mean to say that the appellate court may not, under some circumstances, require his personal presence, but only that his presence is not essential to its jurisdiction to proceed with the case."

We have a statute in this State which recognizes by its express provisions the practice of proceeding with misdemeanor cases in the supreme court in the prisoner's absence. Shan. Code, section 7224. This section provides that in all misdemeanor cases, in event of an appeal in error or writ of error, the trial court, or its judge, shall direct the clerk of the circuit court to admit the defendant to bail, in a sum prescribed by such judge or court, with sufficient sureties, for his appearance at the circuit court in which judgment was rendered against him, at the next term after the decision of the case by the supreme court, to answer the judgment of said court. The next section declares that in all such cases it is the duty of the clerk of the supreme court immediately after the decision of the case by the court to make out and certify a copy of the judgment to the clerk of the circuit court from which the case was brought.

There is no statute regulating the practice in this regard in felony cases. The practice, however, has always been for the trial courts to take bonds or recognizances for the appearance of the prisoner at the next or pending term of the supreme court, and conditioned not to depart without the leave of this court. If no such bond or recognizance be executed in the trial court, this court, the supreme court, is authorized to take a bond or bonds in such sum or sums as it may deem proper. Shan. Code, section 7112. The court may also recommit offenders in any State case when it may appear necessary, and remand the case to the trial court, taking recognizance or bond from such defendant when the offense charged is bailable, with such security as the court may judge it right to require. Shan. Code, section 6331. And the court may cause judgment to be entered on any of these bonds or recognizances, and all others executed during the progress of the cause, whether executed, under the provisions referred to, in the trial court, or in the supreme court, or under the general provisions of law, or by lawful order of the court. Shan. Code, section 6332.

It would seem, therefore, that accused persons bonded to appear in this court must do so. This does not mean, however, that they must be present during the argument of the cause or at the decision, any more than persons in jail. This matter is within the discretion of the court. They must be present, of course, in cases where judgments are affirmed, either at the time or later, in order that actual custody may be taken

Vowell v. State.

of them, and that they may be transported to the penitentiary.   In cases of reversal and a remand to the lower court for a new trial they must attend to give a bond or recognizance, unless permitted by order of the court to surrender to the sheriff of the trial court and give bond there.   By what has just been said it is not meant that it is not the duty of an accused, standing on bond or recognizance, to attend court pursuant to the terms of such bond or recognizance, or that the court could not have him called out at any time it might deem the interests of justice should require, but simply that the presence of the accused is not essential to the jurisdiction of the court when hearing or deciding the case.   We may add that it is not probable that the court will affirm the judgment in any felony case when accused is under bond without having him present in court; since, knowing the adverse judgment rendered in his absence, he would be tempted to flee, and might yield to that temptation.   It is also true that the court would rarely, and only under very special circumstances, reverse a judgment in a felony case when the accused is under bond, without requiring his presence in court; since, if such practice should become general, accused persons on bond or recognizance summoned to hear judgment would at once infer an unfavorable result, and so be prompted to breach the bond and escape.   We feel sure that reasons like this underlie the just discrimination made by the legislature between misdemeanor and felony cases in authorizing the taking of bonds in the former class conditioned to ap-

pear at the term of the trial court next succeeding a term of the supreme court at which the case had been determined, and making no such provision for felony cases.